IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA       )
                               )
       v.                      )          1:16CR435-1
                               )
JOHN KERMIT ALLEN, JR.         )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court is the motion of Defendant John Kermit Allen, Jr., to suppress all evidence seized, including ammunition, and all incriminating statements made during his encounter with law enforcement on November 28, 2016.  (Doc. 12.)  The Government has filed a response (Doc. 14), and an evidentiary hearing was held on February 14, 2017.  For the reasons set forth below, the motion will be granted.

## I.    BACKGROUND

The Government presented the testimony of Officer Corey Carter, a three-year veteran of the Jonesville (North Carolina) Police Department ("JPD"), and Michael Hutchins, a former corporal and eight-year veteran of the JPD.  The court finds their testimony credible unless it differs in recollection from the body-camera audio-video of the encounter, which the Government introduced and the court has viewed in full.  Based on the complete record, the court finds the following facts by a preponderance of the evidence.

On November 28, 2016, at just after 3:00 p.m., Officer Carter and Corporal Hutchins responded to a report of a black male lying on the ground on a lot near Cedarbrook Road in Jonesville. Upon arriving, they found 58-year-old John Kermit Allen, Jr., lying on his back, responsive, and apparently inebriated; Allen had urinated on himself. While lying on the ground, Allen responded to the officers' questions, gave his name, date of birth, and address, and indicated that he was a veteran and married. He said he had sleep apnea and had passed out. He frequently told Officer Carter, "I'm all right" and denied he was diabetic. Nevertheless, Officer Carter called emergency medical services ("EMS") to check on him.

While they awaited the EMS unit, Allen and the officers engaged in friendly conversation. Allen frequently said that he was fine ("I'm all right, guys") and could walk to his grandmother's house ("I'll walk"). Officer Carter said he would be happy to drive Allen to his grandmother's, expressing concern over the fact that Allen still appeared impaired from alcohol.

The EMS technicians arrived and checked on Allen. Allen was able to state the date, identify the town where he lived, and name the current president. After finding Allen's blood pressure normal and completing their assessment, the technicians agreed that Allen did not require further medical treatment and obtained his release

on a medical form.  The technicians offered to take Allen wherever he needed to go, but Allen declined.

Once EMS left, Allen told JPD officers that his grandmother lived only three houses down the street.  Officer Carter helped Allen, who had a jacket and a Bible, stand up.  Once up, Officer Carter told Allen he would drive him in his patrol car.  Officer Carter took Allen's jacket and said he would put the jacket in the trunk asking, "Ok?"  Allen responded, "I don't care."  Officer Carter then added, "You don't mind if I check these pockets to make sure there's nothing on here?"  Allen shrugged his shoulders but did not respond.  As Officer Carter began probing, Allen stated, "I ain't got no gun on me.  I've got some bullets on me in my pockets right here."  Officer Carter said, "You got some bullets?" and cautioned, "Don't reach for them."

Officer Carter stood at the back of his patrol vehicle and proceeded to engage in an extensive search of Allen's jacket over the next several minutes, inspecting and laying items he found onto the trunk of his patrol car.  Meanwhile, Allen stood near the passenger side of the patrol car with Hutchins, who engaged him in conversation as they both watched Officer Carter.

As Officer Carter found a pipe, he asked, "What have you been smoking?"  Allen responded, "cigars."  At one point, Allen asked, "what are you looking for, man?"  Hutchins said they were making sure Allen did not have a gun, to which Allen responded, "Oh, I

3

ain't got no gun, I'm a felon." Allen also noted that he had a knife in his pocket. Officer Carter asked, "You have rounds on you, don't you?" Allen answers, "Yes, for home security. Nothing to fire it with." Officer Carter shortly thereafter said, "You just said you have rounds and you said you're a felon?"

While searching the jacket, Officer Carter found trace evidence of marijuana. Once he finished searching the jacket, Officer Carter moved toward Allen and told him he would search his pockets. The Government concedes that Officer Carter did not ask for consent before he began this search of Allen's person, digging into his pockets. On Allen, Officer Carter found several rounds of .40 caliber, .22 caliber, and 7 mm ammunition in Allen's front pocket. Officer Carter also asked Allen, "you smoke a little weed?" to which Allen responds, "yeah."

Officer Carter put Allen in the back seat of his patrol car. Allen asked several times whether he was under arrest, and Officer Carter assured him he was not, saying, "no sir, I'm giving you a ride back to your house, that's what we agreed to, remember?" Eventually, Officer Carter drove Allen to his grandmother's house about three houses away and issued him a citation for misdemeanors related to his marijuana possession.

Allen is presently charged with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). He now moves under the Fourth and Fifth Amendments to the United States

4

Constitution to exclude any incriminating evidence seized from him on November 28, 2016, as well as any incriminating statements he made. Allen argues that the JPD lacked consent to search his jacket and lacked reasonable suspicion to search his person thereafter. Any incriminating statements, he claims, were the result of an unlawful search of his jacket and should be suppressed. The Government argues that Allen gave voluntary responses to JPD officers, who had probable cause to search Allen's pants pockets once they found marijuana residue and smoking pipes in Allen's jacket, and based on Allen's voluntary statements that he had ammunition and was a felon.

## II. ANALYSIS

The Government initially contends that Allen consented to the search of his jacket and that once officers found evidence of marijuana in it, they had probable cause to search Allen's pockets. (Doc. 14 at 3-6.) The Government also contends that officers relied on Allen's voluntary statements made during the encounter that he was a felon, possessed ammunition in his pockets, and had a knife. (Id.) However, during the evidentiary hearing, the Government conceded that Allen never clearly assented to the search of his jacket.[1]

---

[1] At the hearing, the Government renounced any effort to justify the search of Allen's jacket or person under Terry v. Ohio, 392 U.S. 1 (1968).

5

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. "Thus, police officers may not place their hands on citizens 'in search of anything' without 'constitutionally adequate, reasonable grounds for doing so.'" United States v. Burton, 228 F.3d 524, 527 (4th Cir. 2000) (quoting Sibron v. New York, 392 U.S. 40, 64 (1968)). Consent is an exception to the Fourth Amendment's warrant requirement. The Government bears the burden of proving, by a preponderance of the evidence, that it obtained a knowing and voluntary consent to a search. United States v. Mendenhall, 446 U.S. 544, 557 (1980); United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007). "The Government must shoulder the burden of proving that an individual freely and intelligently [gave] . . . unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied." United States v. Morrow, 731 F.2d 233, 235-36 (4th Cir. 1984) (internal quotation marks and citation omitted).

Here, the Government concedes there is no evidence that Allen ever responded verbally to Officer Carter's statement that he was going to search the jacket. At the motion hearing, Officer Carter testified candidly that he could not remember whether Allen shrugged his shoulders but stated that "he did not object to me continuing on" to search his jacket. But it is not Allen's burden to object; it is the Government's burden to obtain free,

6

unequivocal, and specific consent.   As to Allen's pockets, moreover, the Government concedes the officers never asked to search them.   The court agrees with Allen, therefore, that the Government cannot ground the legality of its searches on consent. United States v. Weidul, 325 F.3d 50, 53-54 (1st Cir. 2003) (upholding as not clearly erroneous trial court's finding that defendant's nonresponse and later response of "okay" to officer's statement "I'm going to look in here," referring to a laundry room, failed to demonstrate consent).

Because the Government lacked valid consent to search Allen's jacket, it cannot rely on the fruits of that search – the marijuana and related paraphernalia – to justify the search of Allen's pockets.   Wong Sun v. United States, 371 U.S. 471, 488 (1963). The Government's case thus rests on expressions of officer safety concerns and the voluntariness of Allen's statements, especially after Allen said he was a felon, had ammunition in his pockets, and possessed a knife.

To be sure, the JPD officers may have had safety concerns because Allen was being placed in their patrol car for the trip to his grandmother's.   As the Government puts it, it was reasonable for the officers to ensure that Allen was neither a danger to them while in the patrol car nor carrying any illegal item that they would otherwise be unwittingly transporting.   These are legitimate concerns.   Typically, they are satisfied lawfully because a

7

detainee is searched incident to his arrest before being placed in a patrol car. See Arizona v. Gant, 556 U.S. 332, 337-39 (2009). Here, by contrast, Officer Carter was *offering* to give Allen a ride and repeatedly told him he was not being arrested. The Government has cited no case providing that it is vested with generalized authority to search an individual under such circumstances, and the court is not aware of one. Before Allen uttered the statements upon which the Government relies, he did not present any indication he was armed and dangerous, and the Government does not contend that Terry justified its actions up to that time. Cf. United States v. Robinson, __ F.3d __, 2017 WL 280727, at *4-5 (4th Cir. 2017) (finding that officers had evidence the defendant was armed and thus dangerous).

Thus, the Government's case relies on Allen's statements, specifically that he stated that he had a knife, had ammunition in his pockets, and was a felon – the latter two statements constituting a concession that he was committing the 922(g) violation of which he is charged. (Doc. 14 at 3-5.) The Government argues that Allen's statements gave officers probable cause to search his pockets. (Id. at 5.) Allen responds that he was "detained" during the searches – a proposition the Government denies – and that the statements nevertheless are fruit of the illegal search of his jacket. (Doc. 12 at 4.)

8

No doubt Allen's statements were in effect an admission of criminal conduct to justify arrest.  Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998) (stating that probable cause to justify an arrest exists when a reasonably prudent police officer has sufficient knowledge to believe that a suspect has committed or is committing a criminal offense (citing Michigan v. DeFillippo, 443 U.S. 31, 37 (1979))); Virginia v. Moore, 553 U.S. 164, 177 (2008) ("'A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment.'" (quoting Robinson, 414 U.S. at 235)).  And even if Allen were detained at the time, "[a]ny statement given freely and voluntarily without any compelling influences is admissible in evidence." Miranda v. Arizona, 384 U.S. 436, 478 (1966).  This begs the question whether, as Allen argues, his statements came during and as a consequence of the unlawful search of his jacket, which Officer Carter took from him.  (Doc. 12 at 4.)  The court concludes that they did.

Allen mentioned he had bullets in his pocket twice – once after Officer Carter took his jacket and began his search, and again after watching Officer Carter remove items from Allen's jacket and place them on the trunk of the patrol car.  This unconstitutional search continued for several minutes, as Allen was made to watch nearby while Officer Hutchens stood next to him.

The question is whether Allen's statements are tainted by the prior illegal search of the jacket.  The Government does not

9

address this question, whose resolution depends on three factors:
(1) temporal proximity, (2) the presence of intervening
circumstances, and (3) the purpose and flagrancy of the official
misconduct. Utah v. Strieff, 136 S. Ct. 2056, 2061-62 (2016); see
also McCloud v. Bounds, 474 F.2d 968, 970 (4th Cir. 1973) (finding
that the test for determining the admissibility of a confession is
"'whether, granting establishment of the primary illegality, the
evidence . . . has been come at by exploitation of that illegality
or instead by means sufficiently distinguishable to be purged of
the primary taint.'" (citing Wong Sun, 371 U.S. at 488)). Here,
these factors weigh in favor of suppression.

First, Allen's statements came shortly after Officer Carter
took his jacket and began probing it, and they continued while the
search dragged on.[2] In fact, Allen's first admission of possessing
ammunition came in response to Officer Carter's statement that he
was going to check the jacket's pockets "to make sure there's
nothing on here." Allen's second statement came a few minutes
later while Officer Carter was systematically removing the
jacket's contents and displaying them on the trunk of his patrol
car. This prompted Allen to ask, "What are you looking for, man?"
to which Corporal Hutchins, who was standing next to Allen,

---

[2] Although Officer Oliver testified that Allen mentioned a knife before
the search of the jacket, the audio-video of the encounter reveals such
a statement only well after the jacket search had begun.

10

responded, "He's making sure you don't have a gun." Only after that did Allen respond, "Oh, I ain't got no gun, I'm a felon." To ensure he understood Allen previously, Officer Carter asked again, "You have rounds on you, don't you?" to which Allen answered, "Yes." This factor thus favors suppression because, as the Supreme Court has noted, its "precedents have declined to find that this factor favors attenuation unless 'substantial time' elapses between an unlawful act and when the evidence is obtained." Strieff, 136 S. Ct. at 2062. No such substantial delay exists here.

Second, the court finds the search of the jacket and Allen's statements connected not only in time, but in sequence. While Allen was cooperative throughout the encounter, acknowledging that he understood that the officers "got a job to do," it is highly unlikely that Allen would have made the statements had the officers not searched his jacket. It was the search of the jacket and Corporal Hutchins' statement that prompted Allen's comments about the ammunition and his status as a felon. There were no intervening circumstances that divorced Allen's statements from the unlawfulness of the search. In fact, Allen's statements were made out of apparent concern for what the ongoing jacket search would find and were, in part, in direct response to the officers' comments and questions. Cf. id. (finding that the valid police activity – there, a proper warrant for arrest - was "entirely

11

unconnected" from the unlawful stop). This factor thus favors suppression.

Finally, while Officer Carter's actions may not have been flagrant in so far as Allen may have shrugged his shoulders and seemed cooperative, they were purposeful. In one sense, the officer was doing good police work, aware that Allen had passed out because of something he ingested. And it was good community caretaking to make sure that Allen made it safely to his grandmother's, especially when the effects of whatever intoxicating substance he used may not have fully worn off. But it is apparent that Officer Carter was interested in searching Allen's jacket and pockets; he candidly admitted as much during the suppression hearing. Consent would have been sufficient to justify the search of the jacket.

Given Allen's close proximity to his destination and Officer Carter's statement at the hearing – that if Allen had objected to the search, he and Corporal Hutchins would have stopped what they were doing and either walked Allen home three houses down the street or found a family member to get him – it seems all the more likely that the officers' primary objective was getting into Allen's jacket and pockets. It would undermine the Fourth Amendment to encourage law enforcement to search during a consensual encounter under these circumstances based on the

12

individual's failure to object.  This factor thus also favors suppression.

In addition, the Government makes no argument that the officers found Allen's ammunition or elicited his statement by means of any other exception to the "fruit of the poisonous tree" doctrine, such as inevitable discovery or independent source. See Strieff, 136 S. Ct. at 2061 (explaining the inevitable discovery, independent source, and attenuation doctrines); Nix v. Williams, 467 U.S. 431 (1984) (same).

The Government nevertheless argues that Allen's statements are admissible as being voluntary.  But it does not address why this would be so or whether they are sufficiently detached from the taint of any prior unconstitutional conduct on behalf of law enforcement officers.  On these issues, the Government bears the burden of proof.  See Brown v. Illinois, 422 U.S. 590, 603–04 (1975) ("The voluntariness of the statement is a threshold requirement. . . . And the burden of showing admissibility rests, of course, on the prosecution."); United States v. Close, 349 F.2d 841, 851 (4th Cir. 1965) (acknowledging that "not all oral statements are the fruit of the 'poisonous tree' simply because they would not have been made but for the illegal action of the police," but the Government must show they are "freely and voluntarily made without coercion" to be "purged of any stigma of illegality").)

While it is not clear on the record whether Allen's will was "overborne" by the actions of Officers Carter and Hutchens, it is clear that the Government has not met its burden in proving that Allen's statements were voluntary.[3]  Officer Carter's search of the jacket, which he took from Allen after softly cajoling him to accept a ride and after Allen had more than once said he was "all right" and would walk, renders it unlikely that Allen would have made the statements he did.  This is especially true in light of Allen's inebriation, exhibited by his difficulty standing up without assistance (indeed, it required multiple attempts with the help of Officer Carter); his frequent questioning of whether he was under arrest, indicating his lack of full comprehension of the officers' repeated assertions that he was not under arrest; and his confusion as to why the nature of his interaction with the

---

[3] Whether a defendant's statement is admissible "turns on whether the statement was voluntary under the Fifth Amendment."  United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997).  A "statement given freely and voluntarily without any compelling influences is admissible in evidence," whereas an involuntary statement is not.  Id. at 780-81.  When determining the voluntariness of a statement, courts should analyze "whether the confession was extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence."  Id. at 780 (citations omitted).  Courts should further consider "whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired,'" United States v. Pelton, 835 F.2d 1067, 1071 (4th Cir. 1987) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973)), because of coercive police conduct.  Colorado v. Spring, 479 U.S. 564, 574 (1987).  The decision is based on the "totality of the circumstances," including the characteristics of the defendant, the setting of the interview, and the details of the interaction.  United States v. Cristobal, 293 F.3d 134, 140 (4th Cir. 2002).  Inherent in this analysis is a focus on the "crucial element of police overreaching."  Colorado v. Connelly, 479 U.S. 157, 163 (1986) (collecting cases).

14

officers appeared to change from an inquiry into his health and safety into an investigation concerning items illicitly in his possession. All of these factors weigh against the argument that Allen's statements were voluntary, and they are magnified when considering the impact of the officers' search of Allen's coat without his consent. Under the totality of the circumstances, the court cannot say that Allen's statements, even if not coerced, were made "freely" and are "so attenuated as to dissipate the taint." Wong Sun, 371 U.S. at 491.

While not directly on point, United States v. Saafir, 754 F.3d 262 (4th Cir. 2014), is instructive. There, the Fourth Circuit held an officer's false assertion that he had authority to search the defendant's car irreparably tainted the defendant's incriminatory statements and the ensuing search. In reaching this conclusion, the Fourth Circuit found that the officer's unlawful assertion, followed by his question whether there was anything they should know about the inside of the car, prompted the defendant's statements that there "might" be, and when pressed for clarification, that there "might be a gun in the vehicle" and it "might be under the seat." Id. at 265. Here, it was Officer Carter's unconstitutional search of Allen's jacket that concerned Allen and prompted his admissions that in turn led to the search of his pockets containing ammunition. Although a closer case than Saafir, the "causal connection" between the Fourth Amendment

15

violation and the Defendant's statements is sufficiently "clear,"
with the Defendant's incriminating statements coming shortly after
the officer's conduct.   See Saafir, 754 F.3d at 267.   Allen's
"incriminatory statements could not, therefore, serve as a proper
basis for probable cause for a search."   Id.

    With no other justification offered, the court finds Officer
Carter's search of Allen's pockets unconstitutional, and the
evidence found therein and statements made by Allen are
inadmissible.   Allen's motion to suppress will therefore be
granted.

## III. CONCLUSION

    For the reasons stated,

    IT IS THEREFORE ORDERED that the motion of Defendant John
Kermit Allen, Jr. to suppress evidence seized as a result of, and
incriminating statements made during, the search of his jacket and
person on November 28, 2016 (Doc. 12) is GRANTED.


                                    /s/  Thomas D. Schroeder
                                 United States District Judge

March 3, 2017


16